# SUPREME COURT OF THE UNITED STATES

SCOTT KERNAN, SECRETARY, CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHA-
BILITATION *v.* MICHAEL DANIEL CUERO

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 16–1468.   Decided November 6, 2017

PER CURIAM.

The Antiterrorism and Effective Death Penalty Act of 1996 provides that a federal court may grant habeas relief to a state prisoner based on a claim adjudicated by a state court on the merits if the resulting decision is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U. S. C. §2254(d)(1). In this case, a California court permitted the State to amend a criminal complaint to which the respondent, Michael Cuero, had pleaded guilty. That guilty plea would have led to a maximum sentence of 14 years and 4 months. The court acknowledged that permitting the amendment would lead to a higher sentence, and it consequently permitted Cuero to withdraw his guilty plea. Cuero then pleaded guilty to the amended complaint and was sentenced to a term with a minimum of 25 years.

A panel of the Court of Appeals for the Ninth Circuit subsequently held that the California court had made a mistake of federal law. In its view, the law entitled Cuero to specific performance of the lower 14-year, 4-month sentence that he would have received had the complaint not been amended.

The question here is whether the state-court decision "involved an unreasonable application o[f] clearly established Federal law, as determined by the Supreme Court of the United States." *Ibid.* Did our prior decisions (1)

clearly *require* the state court to impose the lower sentence that the parties originally expected; or (2) instead permit the State's sentence-raising amendment where the defendant was allowed to withdraw his guilty plea? Because no decision from this Court clearly establishes that a state court must choose the first alternative, we reverse the Ninth Circuit's decision.

I

On October 27, 2005, the State of California charged Michael Cuero with two felonies and a misdemeanor. App. to Pet. for Cert. 26a–33a. Its complaint alleged that on October 14, 2005, Cuero drove his car into, and seriously injured, Jeffrey Feldman, who was standing outside of his parked pickup truck. *Id.,* at 27a–28a. The complaint further alleged that Cuero was then on parole, that he was driving without a license, that he was driving under the influence of methamphetamine, and that he had in his possession a loaded 9-millimeter semiautomatic pistol. *Ibid.*

Cuero initially pleaded "not guilty." But on December 8, he changed his plea. A form entitled "PLEA OF GUILTY/NO CONTEST—FELONY" signed by Cuero, the prosecutor, and the trial court memorialized the terms of Cuero's guilty plea. See *id.*, at 77a–85a. On that form, Cuero pleaded guilty to the two felony counts. *Ibid.*; see Cal. Veh. Code Ann. §23153(a) (West 2017) (causing bodily injury while driving under the influence of a drug); Cal. Penal Code Ann. §12021(a)(1) (West 2005) (unlawful possession of a firearm). He also admitted that he had previously served four separate prison terms, including a term for residential burglary, which qualifies as a predicate offense under California's "three strikes" law. Cal. Penal Code Ann. §667(a)(1) (West 2017); see *Ewing* v. *California*, 538 U. S. 11, 15–17 (2003). Finally, Cuero acknowledged on this guilty-plea form that he understood

that he "may receive this maximum punishment as a result of my plea: 14 years, 4 months in State Prison, $10,000 fine and 4 years parole." App. to Pet. for Cert. 80a.

Following a hearing, the state trial court accepted the plea and granted California's motion to dismiss the remaining misdemeanor charge. The court then scheduled the sentencing hearing for January 11, 2006.

Before the hearing took place, however, the prosecution determined that another of Cuero's four prior convictions qualified as a "strike" and that the signed guilty-plea form had erroneously listed only one strike. See Cal. Penal Code Ann. §245(a)(1) (assault with a deadly weapon). This second strike meant that Cuero faced not a maximum punishment of just over 14 years (172 months), but a *minimum* punishment of 25 years. §§667(e)(2)(A)(ii), 1170.12(c)(2)(A)(ii).

The State asked the trial court for permission to amend the criminal complaint accordingly. It pointed to Cal. Penal Code §969.5(a), which provides:

> "Whenever it shall be discovered that a pending complaint to which a plea of guilty has been made under Section 859a does not charge all prior felonies of which the defendant has been convicted either in this state or elsewhere, the complaint may be forthwith amended to charge the prior conviction or convictions and the amendments may and shall be made upon order of the court."

Cuero argued that the State's motion was untimely and prejudicial. But the trial court granted the motion. At the same time, the court permitted Cuero to withdraw his guilty plea in light of the change. It concluded that §969.5(a) "guide[d]" its inquiry and was best read to reflect a legislative determination that criminal complaints should charge all prior felony convictions. App. to Pet. for

Cert. 178a. The court added that the case was distinguishable from "a situation where the [State] might, after a guilty plea, seek to amend" a criminal complaint by adding "new charges" or facts that fundamentally alter the substance of the complaint. *Id.,* at 179a. But here, where only "alleged prior convictions" were at issue, the court could eliminate any prejudice to Cuero by allowing him to withdraw his initial guilty plea, thereby restoring both parties to the status quo prior to its entry. *Ibid.*

Soon thereafter, California amended the complaint. The complaint as amended charged Cuero with one felony, (causing bodily injury while driving under the influence of a drug under Cal. Veh. Code Ann. §23153(a)), and it alleged two prior strikes. Cuero then withdrew his initial guilty plea and entered a new guilty plea to the amended complaint. On April 20, 2006, the trial court sentenced Cuero to the stipulated term of 25 years to life. His conviction and sentence were affirmed on direct appeal, and the California Supreme Court denied a state habeas petition.

Cuero then filed a petition for federal habeas relief in the United States District Court for the Southern District of California. The Federal District Court denied Cuero's petition, but the Court of Appeals for the Ninth Circuit reversed. *Cuero* v. *Cate*, 827 F. 3d 879 (2016).

The Ninth Circuit panel hearing the appeal held that the state trial court had "acted contrary to clearly established Supreme Court law" by "refusing to enforce the original plea agreement" with its 172-month maximum sentence. *Id.*, at 888. It wrote that "[i]n this context, specific performance" of that plea agreement—*i.e.,* sentencing Cuero to no more than the roughly 14-year sentence reflected in the 2005 guilty-plea form—was "necessary to maintain the integrity and fairness of the criminal justice system." *Id.*, at 890, n. 14. The Ninth Circuit denied rehearing en banc over the dissent of seven judges.

*Cuero* v. *Cate*, 850 F. 3d 1019 (2017). The State then filed a petition for certiorari here.

## II

The Ninth Circuit has already issued its mandate in this case. And the state trial court, in light of that mandate, has resentenced Cuero. Cuero argues that this fact renders this controversy moot. The State and Cuero, however, continue to disagree about the proper length of Cuero's sentence, a portion of which he has not yet served. Thus, neither the losing party's failure to obtain a stay preventing the mandate of the Court of Appeals from issuing nor the trial court's action in light of that mandate makes the case moot. *Mancusi* v. *Stubbs*, 408 U. S. 204, 206–207, and n. 1 (1972); *Eagles* v. *United States ex rel. Samuels*, 329 U. S. 304, 306–308 (1946). Reversal would simply "und[o] what the *habeas corpus* court did," namely, permit the state courts to determine in the first instance the lawfulness of a longer sentence not yet served. *Id.*, at 308.

## III

The Ninth Circuit, in ordering specific performance of the 172-month sentence set forth on Cuero's original guilty-plea form, reasoned as follows. First, the court concluded that Cuero's guilty-plea form amounts to an enforceable plea agreement. 827 F. 3d, at 884–885. Second, that plea agreement amounts to, and should be interpreted as, a contract under state contract law. *Id.,* at 883 (citing *Ricketts* v. *Adamson*, 483 U. S. 1, 5, n. 3 (1987)). Third, California contract law would consider the State's motion to amend the complaint as a breach of contract. 827 F. 3d, at 887–890. Fourth, "the remedy for breach must 'repair the harm caused by the breach.'" *Id.*, at 890 (quoting *People* v. *Toscano*, 124 Cal. App. 4th 340, 20 Cal. Rptr. 3d 923, 927 (2004)). Fifth, rescission failed to "'re-

pair the harm.'"   827 F. 3d, at 891.   Sixth, consequently
Cuero was entitled to specific performance, namely, a
maximum prison term of 172 months (14 years and 4
months).   *Ibid.*   And, seventh, the state court's contrary
decision was itself "contrary to, or involved an unreason-
able application of, clearly established Federal law, as
determined by the Supreme Court of the United States."
28 U. S. C. §2254(d)(1); see 827 F. 3d, at 888.

We shall assume purely for argument's sake that the
State violated the Constitution when it moved to amend
the complaint.  But we still are unable to find in Supreme
Court precedent that "clearly established federal law"
demanding specific performance as a remedy.   To the
contrary, no "holdin[g] of this Court" requires the remedy
of specific performance under the circumstances present
here. *Harrington* v. *Richter*, 562 U. S. 86, 100 (2011).

Two of our prior decisions address these issues.   The
first, *Santobello* v. *New York*, 404 U. S. 257 (1971), held
that a defendant may not be bound to a plea agreement
following a prosecutorial breach of an enforceable provi-
sion of such an agreement.  *Id.*, at 262.  As relevant here,
however, Chief Justice Burger wrote in the opinion for the
Court that the "ultimate relief to which petitioner is enti-
tled" must be left "to the discretion of the state court,
which is in a better position to decide whether the circum-
stances of this case require only that there be specific
performance of the agreement on the plea" or, alterna-
tively, that "the circumstances require granting the relief
sought by petitioner, *i.e.,* the opportunity to withdraw his
plea of guilty." *Id.*, at 262–263.

The Ninth Circuit cited a concurrence in *Santobello* by
Justice Douglas, which added that "a court ought to accord
a defendant's [remedial] preference considerable, if not
controlling, weight inasmuch as the fundamental rights
flouted by a prosecutor's breach of a plea bargain are those
of the defendant, not of the State."  827 F. 3d, at 891, n. 14

(quoting *Santobello*, *supra*, at 267). Three other Justices agreed with Justice Douglas on this point, and because only seven Justices participated in the case, the Ninth Circuit suggested that a four-Justice majority in *Santobello* seemed to favor looking to the defendant's preferred remedy. 827 F. 3d, at 891, n. 14 (citing *Santobello*, *supra*, at 268, and n. (Marshall, J., concurring in part and dissenting in part)). The Ninth Circuit also pointed in support to its own Circuit precedent, a criminal procedure treatise, a decision of the Washington Supreme Court, and a law review article. See 827 F. 3d, at 890–891, n. 14 (citing *Buckley* v. *Terhune*, 441 F. 3d 688, 699, n. 11 (CA9 2006); 5 W. LaFave, J. Israel, N. King, & O. Kerr, Criminal Procedure §21.2(e) (4th ed. 2015); *State* v. *Tourtellotte*, 88 Wash. 2d 579, 564 P. 2d 799, 802 (1977); and Fischer, Beyond Santobello—Remedies for Reneged Plea Bargains, 2 U. San Fernando Valley L. Rev. 121, 125 (1973)).

There are several problems with the Ninth Circuit's reasoning below. First, "'fairminded jurists could disagree'" with the Ninth Circuit's reading of *Santobello*. *Richter*, *supra*, at 101 (quoting *Yarborough* v. *Alvarado,* 541 U. S. 652, 664 (2004)). Moreover, in *Mabry* v. *Johnson*, 467 U. S. 504 (1984), the Court wrote that "*Santobello* expressly declined to hold that the Constitution compels specific performance of a broken prosecutorial promise as the remedy for such a plea." *Id.,* at 510–511, n. 11 (citing *Santobello*, 404 U. S., at 262–263; *id.*, at 268–269 (Marshall, J., concurring in part and dissenting in part)). The Court added that "permitting Santobello to replead was within the range of constitutionally appropriate remedies." 467 U. S., at 510, n. 11. Where, as here, none of our prior decisions clearly entitles Cuero to the relief he seeks, the "state court's decision could not be 'contrary to' any holding from this Court." *Woods* v. *Donald*, 575 U. S. \_\_\_, \_\_\_ (2015) (*per curiam*) (slip op., at 6) (quoting *Lopez* v. *Smith*, 574 U. S. \_\_\_, \_\_\_ (2014) (*per curiam*) (slip op., at 5)).

Finally, as we have repeatedly pointed out, "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'" *Glebe* v. *Frost*, 574 U. S. ___, ___ (2014) (*per curiam*) (slip op., at 3) (quoting 28 U. S. C. §2254(d)(1)). Nor, of course, do state-court decisions, treatises, or law review articles.

For all these reasons, we conclude that the Ninth Circuit erred when it held that "federal law" as interpreted by this Court "clearly" establishes that specific performance is constitutionally required here. We decide no other issue in this case.

The petition for a writ of certiorari and respondent's motion to proceed *in forma pauperis* are granted. We reverse the judgment of the United States Court of Appeals for the Ninth Circuit and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*